UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

UNITED STATES OF AMERICA )
)
Plaintiff, )
) No. 1:12-cr-0127 WTL-KPF
v. ) No. 1:13-cr-0200 WTL-TAB
)
DONALD JOHN SACHTLEBEN, )
)
Defendant. )

**GOVERNMENT'S COMBINED SENTENCING MEMORANDUM**

Defendant Donald John Sachtleben betrayed this Nation and the most vulnerable members of our society. In so doing, the Defendant forever tarnished his professional reputation as a former agent with the Federal Bureau of Investigation (FBI). Two criminal investigations – Child Pornography and National Security – were initiated by different investigators and prosecutors six hundred miles apart. These investigations became intertwined, as the magnitude of the Defendant's criminal conduct became increasingly clear. The fruits of these investigations and the Defendant's willingness to accept responsibility for his criminal conduct bring the parties before this Court in a single proceeding.

The United States and the Defendant have executed two written plea agreements pursuant to Fed. R. Crim. P. 11(c)(1)(C) [ECF No. 67 in 1:12-cr-0127 WTL-KPF; ECF No. 6 in 1:13-cr-0200 WTL-TAB]. These plea agreements contain, among other provisions, the parties' agreement as to the appropriate sentence of imprisonment in these cases. Specifically, the parties agree that

the Defendant should be sentenced to a combined total of 140 months of imprisonment:  97 months of imprisonment in Cause Number 1:12-cr-0127 WTL-KPF (the "Child Pornography case") and a consecutive 43 months of imprisonment in Cause Number 1:13-cr-0200 WTL-TAB (the "National Security case").  The parties have reached agreement on other terms pertinent to sentencing.  The parties have left it open to argue the appropriate term of supervised release in the Child Pornography case.

This Combined Sentencing Memorandum will provide the procedural history of both cases and a summary of the Defendant's criminal conduct.  It will also address why the Court should accept the parties' Rule 11(c)(1)(C) plea agreements and sentence the Defendant accordingly.  The United States will address at the sentencing hearing why the Court should impose a life term of supervised release in the Child Pornography case.

## I.  PROCEDURAL HISTORY

On May 11, 2012, the Defendant, a resident of Carmel, Indiana, was arrested on charges of distribution and possession of child pornography.  The following day, the Defendant was charged by complaint with Knowing Distribution of Child Pornography and Knowing Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(a)(4)(B).  On August 10, 2012, a criminal information was filed, charging the Defendant with these same counts.  On November 7, 2012, the Defendant filed a petition to enter a guilty plea to the charges contained in the criminal information.  At

that juncture, it appeared that the parties were going to resolve the Child Pornography case with a plea agreement, unconnected to any other matter.

Subsequently, arising from a completely separate criminal investigation based in Washington, D.C., the Defendant was advised through counsel that he was the target in a National Security investigation. Following plea discussions concerning both the Child Pornography case and the National Security investigation, the Defendant agreed to plead guilty in both matters. The United States and the Defendant agreed to present the parties' agreement, memorialized in two written Rule 11(c)(1)(C) plea agreements, to this Court in a single proceeding.

On September 23, 2013, pursuant to the parties' agreement, the United States filed a criminal information in Cause Number 1:13-cr-200 WTL-TAB, charging the Defendant with Unauthorized Disclosure of National Defense Information and Unauthorized Possession and Retention of National Defense Information, in violation of 18 U.S.C. § 793. That same day, the United States filed the Superseding Plea Agreement in the Child Pornography case and the Plea Agreement in the National Security case. These plea agreements cross reference each other and are "wired" together, that is, the Defendant must plead guilty under both agreements or either may be withdrawn or voided at the election of the United States.

Consistent with the parties' agreement, the United States requests, and is prepared to proceed to, a combined plea and sentencing hearing in both cases, at the Court's convenience.

## II.    DEFENDANT'S CRIMINAL CONDUCT

The United States provides the following account of the Defendant's criminal conduct.

### A.    CHILD PORNOGRAPHY CASE

There is no dispute about the facts underlying the Child Pornography case, which are the subject of a Stipulated Factual Basis filed on May 30, 2013.  The following facts are summarized from that pleading.

The Defendant avidly traded in child pornography.  He used his online email accounts to distribute child pornography to at least 12 other people around the world between September 2011 and his arrest on May 11, 2012. The Defendant's conduct was first uncovered through the discovery of an email that he had sent to another distributer of child pornography.  Using the email address pedodave69@yahoo.com, the Defendant sent an email on October 25, 2011, asking to trade child pornography and attaching nine (9) images of child pornography/child erotica.  The Defendant's email stated, "Saw your profile on [redacted name of website.]  Hope you like these and can send me some of yours.  I have even better ones if you like."

The website listed in the Defendant's October 25th email is popular with child pornography traders.  The website is frequently used by such traders to meet other persons with a sexual interest in children or a motive to trade child pornography.  This website is hosted in Russia.

Five of the images attached to the Defendant's October 25th email are described below:

**(1) Pic211.jpg:** This image file depicts three (3) naked prepubescent females who appear to be between eleven (11) and thirteen (13) years of age. One female is lying on her back on the bed with her legs spread slightly apart. The second female is kneeling next to the first one and has her right hand touching the inside of the first female's leg and is looking at her vagina. The third female has her back to the camera and is sitting next to the first two. She has her left hand pressing against the second female's vagina.

**(2) FAM04.jpg:** This image file depicts a naked prepubescent female who appears to be between eleven (11) and thirteen (13) years of age. Also, in the image is a nude adult female. The child is sitting on a bed with her legs bent and spread apart. The adult female is sitting next to her and is reaching over her leg with her right arm and pressing her fingers against the child's vagina.

**(3) Ll-n2-24.jpg:** This image file depicts a naked prepubescent female who appears to be between ten (10) and thirteen (13) years of age. The child is sitting on a bed and leaning back against a pillow. The child has her legs spread apart and is pulling the skin surrounding her vagina apart, exposing her clitoris. The focal point of the image is the child's genitalia.

**(4) 09lils.jpg.jpg:** This image filed depicts a naked prepubescent female who appears to be between nine (9) and twelve (12) years of age. The child is standing and leaning back on something while pushing her genitalia area forward. Also, in the picture is a second female who appears to be between fourteen (14) and seventeen (17) years of age. The older female is

leaning between the child's legs and has her tongue on the child's vagina. The focal point of the image is the child's genitalia.

**(5) Kidx03.jpg:** This image file depicts a prepubescent female who appears to be between eleven (11) and thirteen (13) years of age. The child does not have a shirt on and is standing, looking at the camera. She has pulled her underwear down with both hands and is exposing her genitalia for the camera.

On May 11, 2012, while under law enforcement surveillance, the Defendant arrived at the Indianapolis airport and drove from the airport to his residence in Carmel, Indiana, with his Sony VAIO Laptop. When the Defendant arrived at his residence, law enforcement officers executed a search warrant at his residence and arrested the Defendant on child pornography charges. Approximately 30 image and video files containing child pornography were recovered from the hard drive inside of the Defendant's Sony VAIO Laptop.

The children depicted in the images and video of child pornography found on the Defendant's Sony VAIO laptop were generally below twelve (12) years of age. The sexually explicit conduct in the images and video included actual or simulated oral intercourse and/or lascivious exhibition of the genitals or pubic area of the minor.

One series of images in the collection found on the Defendant's Sony VAIO laptop involved the victim in what the National Center for Missing and Exploited Children (NCMEC) has named the "Blue Pillow" series. Her identity is known to the FBI.

The child pornography files found on the Sony VAIO laptop included at least one of the files distributed by the Defendant in his October 25th email, as described above.  The Defendant's Sony VAIO laptop also contained references to the names of the five child pornography image files listed above.  The names of these files were found in unallocated space.  There were also multiple references to the pedodave69 username in unallocated space and the master file table.

According to analysis by the NCMEC, the Defendant's collection of child pornography included material he distributed and/or possessed from the following identified and known series:

    19
    Blue Shirt Girl
    Clayton&Mat
    Colourful Bedroom
    English Asian
    Golden Angel
    Hayley
    Linda&Patty
    Little Melissa
    Maria&Ellen
    Melinda
    Menz
    Paraguay
    PurpleDaisy
    Sabban
    Tweety

According to the NCMEC, the Defendant's collection of child pornography also included material that he distributed and possessed from the following four known series.  All of these victims require notification:

    1.      BluesPink (Girl 1, Girl 2 and Girl 3) (Michigan)

2.      BluePillow (Girl 4) (California) (this victim has submitted victim impact statements)

3.      Jan_Socks (Girl 5, Girl 6 and Girl 7) (Colorado)

4.      13Shirt (Girl 8) (California)

Of the victims in these four series requiring notification, only the one victim girl in the BluePillow series has made a claim for restitution based upon her past and future costs of mental health treatment and counseling.

During the negotiation of the plea agreement in these matters, the Defendant paid $5,000 in restitution to the victim in the BluePillow series. Under the terms of the Superseding Plea Agreement in the Child Pornography case, she would be potentially entitled to additional restitution.

**B.      NATIONAL SECURITY CASE**

The Defendant committed two distinct national security offenses for which he is prepared to plead guilty and be sentenced.  First, on May 2, 2012, the Defendant willfully disclosed national defense information relating to a disrupted suicide bomb attack on a U.S.-bound airliner by the Yemen-based terrorist organization Al-Qaeda in the Arabian Peninsula ("AQAP") and the recovery by the United States of a bomb in connection with that plot in April 2012 to a reporter with a national news organization ("Reporter A").  When he made that unauthorized disclosure of national defense information, the Defendant had reason to believe that his unauthorized disclosure could be used to the injury of the United States or to the advantage of a foreign nation. Second, in May 2012, at a time when law enforcement agents searched his

residence in Carmel, Indiana, in connection with the Child Pornography case, the Defendant willfully possessed and retained national defense information in that residence. Among other material containing classification markings, the Defendant willfully possessed a Central Intelligence Agency intelligence report marked "SECRET" that remains classified at the SECRET level to this day.

There is no dispute about the facts underlying the National Security case, which are the subject of a Statement of Offense, filed on September 23, 2013. The following facts are summarized from that pleading.

**(1) Professional Background**

To place the Defendant's conduct in the National Security case in context, it is important to appreciate his professional background. The Defendant was employed by the FBI for approximately 25 years – from 1983 through 2008. In the course of his FBI career, the Defendant was a Special Agent Bomb Technician assigned to the most significant terrorism investigations handled by the FBI. The Defendant worked on the following FBI Major Cases: the Oklahoma City bombing, the first World Trade Center bombing, the Unabomber attacks, the United States Embassy bombings in East Africa, the U.S.S. COLE bombing, and the attacks of September 11, 2001. Among other assignments, the Defendant was assigned to the Explosives Unit at the FBI Laboratory in Quantico, Virginia ("FBI Lab"). He held a TOP SECRET security clearance and had regular access to classified and national defense information relating to the FBI's activities, as well as the activities of other members of the United States Intelligence Community. In 2008, when he

retired from the FBI and was rehired as an FBI contractor, the Defendant maintained his TOP SECRET security clearance and continued to have regular access to classified and national defense information relating to the FBI's activities, as well as the activities of other members of the United States Intelligence Community. Importantly, as a contractor, the Defendant routinely visited the FBI Lab.

Beginning in 1983, the Defendant entered into various non-disclosure agreements with the United States, obligating him not to disclose national defense information to any unauthorized person and advising him that any such unauthorized disclosure could constitute a violation of United States criminal laws, including Title 18, United States Code, Section 793. The Defendant entered into such non-disclosure agreements both as an FBI employee and as an FBI contractor. The Defendant is prepared to plead guilty to the Section 793 offenses charged in the criminal information in the National Security case. By so doing, the Defendant acknowledges that he breached his duties under the non-disclosure agreements that he signed and, more fundamentally, violated the trust that the FBI placed in him.

**(2) Defendant's Relationship with Reporter A**

As the Defendant admits in the Statement of Offense, his unauthorized disclosure of national defense information to Reporter A was not the result of any desire to expose perceived waste, fraud, abuse, or other government misconduct. By May 2012, the Defendant had already struck up a relationship with Reporter A and had revealed FBI information to that reporter.

Their source-reporter relationship initially focused on the Defendant's contract work on the FBI's National Improvised Explosives Familiarization ("NIEF") training program, but quickly developed into other areas beyond the NIEF program. For example, from January 2010 through May 2012, in emails, text messages, and conversations, the Defendant provided Reporter A with information about explosives used in terrorist plots or attacks and the FBI's analysis of such explosives. While doing so, the Defendant repeatedly asked Reporter A to keep his true identity and his relationship with Reporter A protected and confidential. When discussing in an email exchange how to refer to the Defendant as an anonymous source for an article to be published, the Defendant asked Reporter A not to refer to him as a contractor because there was a "[p]retty small number of us."[1]

**(3) Defendant's Unauthorized Disclosure of NDI ("The Leak")**

On April 30, 2012, following the disruption of a suicide bomb attack on a U.S.-bound airliner by AQAP and the recovery by the United States of a bomb in connection with that plot, the bomb arrived at the FBI Lab for forensic analysis. At approximately 6:30 p.m. on April 30th, ABC World News Tonight broadcast a news story which stated, in part, that for the past year, United States and European officials had warned that AQAP's master bomb-maker, Ibrahim al-Asiri, had been designing surgically implanted body bombs to get past airport security, and that there was concern that AQAP may soon try to

[1] As mentioned in the Statement of Offense [ECF No. 7 in 1:13-cr-0200 WTL-TAB], the emails and text messages between the Defendant and Reporter A were obtained from the Defendant's electronic devices.

explode a U.S.-bound aircraft with explosives hidden inside the bodies of terrorists.

Later that same evening, beginning at approximately 7:14 p.m., the Defendant and Reporter A exchanged text messages about al-Asiri and Reporter A's speculation about the FBI's recovery of a surgically implanted body bomb (also known as a "cavity bomb"). (The bomb that arrived at the FBI Lab earlier that day was not a surgically implanted body bomb or cavity bomb.) The text message exchanges between the Defendant and Reporter A reflect this speculation. These text messages were as follows:

| Date | Time | Originating Cellular Phone | Terminating Cellular Phone | Content of Text Message |
|---|---|---|---|---|
| 4/30/2012 | 7:14 p.m. | Reporter A | Defendant | Al-Asiri is up to his old tricks. I wonder if ur boys got a hold of a cavity bomb |
| 4/30/2012 | 7:14 p.m. | Reporter A | Defendant | :) |
| 4/30/2012 | 7:15 p.m. | Defendant | Reporter A | Yikes. Remind me to bring sum purell to the lab |
| 4/30/2012 | 7:16 p.m. | Reporter A | Defendant | Not totally sure though |

The following day (May 1st), beginning at approximately 9:48 a.m., the Defendant and Reporter A exchanged two more text messages, in which the Defendant suggested that an FBI news conference at 10 a.m. might shed light on what Reporter A was interested in. These text messages were as follows:

| Date | Time | Originating Cellular Phone | Terminating Cellular Phone | Content of Text Message |
|---|---|---|---|---|
| 5/1/2012 | 9:48 a.m. | Defendant | Reporter A | Hmm. Methinks the 10am news conf may be related |
| 5/1/2012 | 9:51 a.m. | Reporter A | Defendant | Ah! |

It turned out that the Defendant's conjecture was incorrect. The FBI news conference at 10 a.m. on May 1st was about the arrest of five men in Cleveland, Ohio, who were charged with plotting a bomb attack on a bridge in Ohio. This FBI news conference had nothing to do with the bomb that had arrived at the FBI Lab the day before.

Later that morning, the Defendant and Reporter A exchanged more text messages just prior to the Defendant's departure from the Indianapolis airport and upon landing at the Washington-Dulles airport. The Defendant took that flight because he was heading to the FBI Lab the following day (i.e., May 2nd), for a previously-planned trip. In his pre-departure text, the Defendant awaited the FBI news conference. In his post-landing text, the Defendant acknowledged that he had guessed wrong about the FBI news conference. Critically, the Defendant recognized – correctly – that something entirely different could be happening at the FBI Lab that Reporter A would be interested in. And, the Defendant told Reporter A that he would try to find out when he got to the FBI Lab the next day. These text messages were as follows:

| Date | Time | Originating Cellular Phone | Terminating Cellular Phone | Content of Text Message |
|---|---|---|---|---|
| 5/1/2012 | 9:52 a.m. | Defendant | Reporter A | Just abt to take off. Will b curious to c coverage when i land at dulles. Hope that tsa doesnt get out the rubber gloves and ky |
| 5/1/2012 | 12:49 p.m. | Defendant | Reporter A | Got that one wrong. A lil surprised they r wrkin 24 hr shifts cuz of those mutts. **Still mght b sumthin else brewin. Will find out tomorrow** (Emphasis added.) |

The next day, the Defendant did what he said he would do, thereby placing lives at risk and severely jeopardizing our national security.

The Defendant arrived at the FBI Lab on May 2nd, using his FBI-issued badge to enter at around 8:39 a.m. Once in the FBI Lab, the Defendant logged into the FBI's classified computer system from a computer terminal located within the FBI Lab in an administrative space designated for the Explosives Unit. That administrative space was directly across the hallway from the examination space for the Explosives Unit, where the bomb was then being examined. The Defendant also used his FBI-issued badge to enter the examination space for the Explosives Unit.[2]

At around 10:25 a.m. that morning, the Defendant called Reporter A and spoke with him for a little over two minutes. In that call, the Defendant

[2] The Defendant did not access any documents on the FBI's classified computer system about the bomb and did not sign the sign-in sheet for access to a specific room within the examination space for the Explosives Unit designated for the examination of the bomb.

disclosed to Reporter A national defense information that he had gathered that morning, including that the FBI was then engaged in an ongoing, secretive, and sensitive analysis of the bomb; analysis which involved other parts of the United States Government besides the FBI. At that time, the Defendant believed that the national defense information that he disclosed to Reporter A was classified at least at the SECRET level.

Approximately two-and-a-half hours later, Reporter A and another reporter from Reporter A's news organization contacted multiple United States Government officials and stated that they knew the following facts: (1) the United States had intercepted a bomb from Yemen; (2) the FBI was analyzing the bomb; and (3) they believed, but had not confirmed, that the bomb was linked to AQAP's premier bomb-maker, Ibrahim al-Asiri. The facts that these reporters stated that they knew as of May 2nd (namely, (1) and (2) in the immediately preceding sentence) constituted classified and national defense information as of that date.

Beginning on May 7th, multiple news organizations published articles about the disrupted suicide bomb attack and recovery of the bomb. The lead article was published by Reporter A's news organization on May 7th at approximately 4 p.m., and was entitled, "US: CIA Thwarts New al-Qaida Underwear Bomb Plot." Thereafter, Reporter A's news organization and other news organizations published additional articles and/or broadcast television reports about the disrupted suicide bomb attack and recovery of the bomb (collectively, the "Media Reports"). Following the publication of the Media

Reports, the Defendant continued to provide information to Reporter A about the bomb.

The Defendant knew that he was never authorized, directly or indirectly, to disclose any classified or national defense information to Reporter A or any other member of the media. The Defendant also knew that he was not acting as any kind of "whistleblower." The Defendant was not trying to reveal any government misconduct to Reporter A. To the contrary, the disruption of the AQAP suicide bomb plot and recovery and analysis of the bomb was a success for our Nation's Intelligence Community, which includes the FBI.

**(4) Defendant's Unauthorized Retention of NDI ("The Documents")**

The Defendant also committed an entirely separate National Security crime. The Defendant willfully possessed and retained in his residence in Carmel, Indiana, on numerous pieces of electronic media, United States Government documents bearing classification markings in their headers or footers or in their individually classified paragraph portion markings. The majority of these documents bore SECRET classification markings. Many of these documents were seized pursuant to a court-authorized search of the Defendant's residence in May 2012, in connection with the Child Pornography case. Others were seized in connection with a subsequent court-authorized search of the Defendant's residence in July 2013, in connection with the National Security case. Among the material seized in May 2012 was a CD/DVD containing, among other things, a Central Intelligence Agency ("CIA")

intelligence report, bearing a "SECRET//NOFORN" classification marking and

the date November 2, 2006. The CIA has conducted a formal classification

review of that intelligence report and determined that the report was and

remains properly marked at the SECRET//NOFORN classification level.[3]

## III. UNITED STATES SENTENCING GUIDELINES CALCULATIONS

Although the parties have reached agreement, pursuant to Rule

11(c)(1)(C), for fixed terms of imprisonment in both the Child Pornography case

(i.e., 97 months) and the National Security case (i.e., 43 months consecutive),

the United States provides the following calculations under the advisory United

States Sentencing Guidelines for the Court's consideration.

### A. CHILD PORNOGRAPHY CASE

The Probation Department has already calculated the Defendant's total

offense level in the Child Pornography case to be 36 at criminal history

category I.

---

[3] "Classified" information is defined by Executive Order 13526 ("Executive Order") as information in any form that: (1) is owned by, produced by or for, or under control of the United States Government; (2) falls within one or more of the categories set forth in the Executive Order; and (3) is classified by an original classification authority who determines that its unauthorized disclosure reasonably could be expected to result in damage to the national security which includes defense against transnational terrorism. Where such unauthorized disclosure reasonably could be expected to cause "exceptionally grave damage" to the national security, the information is classified as "TOP SECRET." Where such unauthorized disclosure reasonably could be expected to cause "serious damage" to the national security, the information is classified as "SECRET." Where such unauthorized disclosure reasonably could be expected to cause "damage" to the national security, the information is classified as "CONFIDENTIAL." The designation "NOFORN" means that the classified information cannot be shared with any foreign nationals or foreign governments.

### B. NATIONAL SECURITY CASE

The Probation Department revised its presentence report to reflect the new conduct, arising from the National Security case. Consistent with the Probation Department's calculations, the parties agree that the base offense level for the lead count in the National Security case (Count One: Unauthorized Disclosure of National Defense Information) is 30, with a two-level increase for abuse of trust, resulting in a total offense level of 32. The base offense level for the other count in the criminal information (Count Two: Unauthorized Possession and Retention of National Defense Information) is 24, with a two-level increase for abuse of trust, resulting in a total offense level of 26.

### C. GROUPS, UNITS, AND FINAL COMBINED OFFENSE LEVEL

The Child Pornography counts group, while the National Security Counts do not. Further, the lead National Security count constitutes 1 additional Unit under the Guidelines, resulting in a two-level increase to the Child Pornography total offense level. After a three-level decrease for acceptance of responsibility, the final combined offense level is 35, resulting in a combined advisory range for both cases of 168-210 months.

## IV. THIS COURT SHOULD ACCEPT THE PARTIES' AGREEMENT AND SENTENCE THE DEFENDANT ACCORDINGLY

As the Court is aware, the parties have reached agreement, as memorialized in two Rule 11(c)(1)(C) plea agreements, one for each of the two cases. These plea agreements are a fair resolution of the Defendant's criminal culpability. Both agreements give the Defendant the benefit of his acceptance

of responsibility by providing him with a lesser aggregate term of imprisonment than the Court might otherwise impose after trial and conviction. Both agreements also benefit the United States, because they avoid the expense, time, and risk associated with two trials by jury. Specific to the Child Pornography case, that agreement also affords the United States the ability to resolve the case without putting the victims through the even greater burdens that a trial would entail. Specific to the National Security case, that agreement provides the United States with an appropriate resolution to this sensitive matter, without risking the exposure of still-classified information through pre-trial or trial disclosures, notwithstanding the protections of the Classified Information Procedures Act, 18 U.S.C. App. 3.

In the Child Pornography case, the United States submits that the parties' agreed-upon 97-month consecutive sentence of imprisonment is appropriate as measured against similarly situated defendants previously sentenced as guided by the relevant 18 U.S.C. § 3553 factors. This judgment is also tempered by the intended request for a lifetime supervised release to follow the Defendant's term of incarceration with several Special Conditions listed in the Superseding Plea Agreement.

In the National Security case, the United States submits that the parties' agreed-upon 43-month consecutive sentence of imprisonment appropriately satisfies the need for both punishment and deterrence in light of the nature and seriousness of the offense. Cf. United States v. Kiriakou, 1:12-cr-127 (LMB) (E.D. Va. Jan. 25, 2013) (30-month sentence imposed pursuant to Rule

11(c)(1)(C) agreement for unauthorized disclosure of national defense information).

## V. CONCLUSION

For the reasons stated above, the United States respectfully requests that the Court accept the parties' plea agreements pursuant to Fed. R. Crim. P. 11(c)(1)(C) and sentence the Defendant accordingly. The United States will request at the sentencing hearing that the Court impose a life term of supervised release in the Child Pornography case.

Respectfully submitted,

JOSEPH H. HOGSETT
United States Attorney for the
  Southern District of Indiana

By:    _s/Steven D. DeBrota_____
       Steven D. DeBrota
       Senior Litigation Counsel
       Attorney
       Steve.debrota@usdoj.gov

RONALD C. MACHEN JR.
United States Attorney for the
  District of Columbia

By:    s/Jonathan M. Malis
       Jonathan M. Malis
       Assistant United States
       (202) 252-7806
       Jonathan.M.Malis@usdoj.gov

       G. Michael Harvey
       Assistant United States Attorney
       (202) 252-7810
       Michael.Harvey2@usdoj.gov

       Richard S. Scott
       Department of Justice Trial Attorney
       (202) 233-2263
       Richard.S.Scott@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2013, a copy of the foregoing Sentencing

Memorandum was filed electronically.  Notice of this filing will be sent to the following parties

by operation of the Court's electronic filing system.  Parties may access this filing through the

Court's system.

**Charles C. Hayes**
SWEENEY LAW
141 E. Washington
Suite 225
Indianapolis, IN 46204
Email: charleshayes.atty@gmail.com

**Kathleen M. Sweeney**
SCHEMBS SWEENEY LAW
141 East Washington Street
Suite 225
Indianapolis, IN 46204
Email: ksween@gmail.com

**Larry A. Mackey**
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN 46204
Email: larry.mackey@btlaw.com

By:    s/Steven D. DeBrota
       Steven D. DeBrota
       Assistant United States Attorney
       Office of the United States Attorney
       10 W. Market Street, Suite 2100
       Indianapolis, IN 46204-3048
       Telephone: (317) 226-6333
       Fax:  (317) 226-6125
       Email:  Steve.DeBrota@usdoj.gov