# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:12-cr-00127-TWP-TAB |
| ) | Case No. 1:13-cr-00200-TWP-TAB |
| DONALD SACHTLEBEN, ) | |
| ) | |
| Defendant. ) | |

## ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

This matter is before the Court on Defendant Donald Sachtleben's ("Sachtleben") Motion for Compassionate Release in the above-captioned cases,[1] requesting a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i) based on "extraordinary and compelling reasons." (Dkt. 43.) He asks the Court to reduce his sentence of imprisonment to time served because of risks associated with the Coronavirus. *Id.* For the reasons stated below, the Motions are **denied**.

## I.   BACKGROUND

Sachtleben worked as a Special Agent for the Federal Bureau of Investigation until his retirement in 2008 when he began working for the agency as a contractor. During his career he specialized in terrorism and was a first responder at the Oklahoma City bombing and the World Trade Center bombing. (Dkt. 22 at 14.) He also investigated the terrorist attacks of September 11, 2001. (Dkt. 43 at 2.)

On August 10, 2012, a criminal information was filed charging Sachtleben with Knowing Distribution of Child Pornography and Knowing Possession of Child Pornography, in violation of

---

[1] Sachtleben filed identical motions in the above-captioned cases. Because the claims and the relief sought in the motions are the same, the Court considers them together. For ease of reference, except where otherwise noted, all docket citations in this Order are to Case No. 1:13-cr-00200-TWP-TAB-1.

18 U.S.C. §§ 2252(a)(2) and 2252(a)(4)(B). On September 23, 2013, pursuant to the parties' agreement, the United States filed a criminal information in Cause Number 1:13-cr-200 WTL-TAB, charging the Defendant with Unauthorized Disclosure of National Defense Information and Unauthorized Retention of National Defense Information, in violation of 18 U.S.C. § 793.

On November 14, 2013, Sachtleben pled guilty to one count of unauthorized possession and retention of national defense information, one count of unauthorized disclosure of national defense information, one count of possession of child pornography, and one count of distribution of child pornography. (Dkt. 26; 1:12-cr-00127-TWP-TAB-1, Dkt. 81.) He was sentenced on November 20, 2013. (Dkt. 27; 1:12-cr-00127-TWP-TAB, Dkt. 82.)

Prior to sentencing, a Presentence Investigation Report ("PSR") was prepared. (Dkt. 22.) The PSR reflects that the charges in these two cases arose after the Federal Bureau of Investigation discovered that Sachtleben had traded child pornography with the subject of another investigation. During the search of Sachtleben's house in connection with the child pornography investigation, investigators discovered classified information Sachtleben was not authorized to possess. Around this same time, Sachtleben disclosed national defense information to a reporter who then contacted government officials in search of additional information. *Id.* at 5-7.

At his sentencing hearing, there were no objections to the PSR. The PSR shows that Sachtleben had no prior convictions. He was assigned a criminal history score of zero and a criminal history category of I. *Id.* at 11. Based on a total offense level of 35 and a criminal history category of I, the advisory guideline imprisonment range was 168 to 210 months. *Id.* Judge William T. Lawrence sentenced Sachtleben to 140 months imprisonment. (Dkt. 173.) He also imposed seven years of supervised release. (Dkt. 27; 1:12-cr-00127-TWP-TAB-1, Dkt. 82.)

Sachtleben is now 62 years old.  He is incarcerated at FCI Elkton in Elkton, Ohio.  He has been incarcerated since September 25, 2013, and his current release date is projected to be August of 2023.  (*See* Dkt. 43 at 1-2.)  He has served over half his sentence.

On July 23, 2020, Sachtleben filed a motion for compassionate release (Dkt. 31).  The Government responded on July 31, 2020, and Sachtleben replied on August 7, 2020. The Court struck the parties' briefing because they did not follow applicable rules for sealing and redacting potentially confidential information.  The parties refiled their briefs on August 14, 2020. The motions are now ripe for review.

## II.  DISCUSSION

In his Motion, Sachtleben argues that the Court should order his immediate release from incarceration because a lesion on his lung makes him vulnerable to serious health complications if he contracts COVID-19, creating extraordinary and compelling reasons warranting a sentence reduction. (Dkt. 43.)  He contends that Elkton FCI, where he is presently housed, has been one of the worst affected with COVID-19 of any of the prisons in the BOP system. *Id*. at 14.  In addition, he argues that he is not a danger to the community and that the sentencing factors in 18 U.S.C. § 3553(a) favor his release.  *Id.*

In response, the Government argues that Sachtleben has not presented extraordinary and compelling reasons for a sentence reduction because the Centers for Disease Control and Prevention has not identified lung lesions as a condition that is known to increase the risk of severe illness from COVID-19.  The Government notes that Sachtleben has not been diagnosed with either lung cancer or Chronic Obstructive Pulmonary Disease (COPD), two conditions that have been identified as causing such a risk. (Dkt. 42 at 35.)  The Government contends that FCI Elkton has taken measures designed to mitigate sharply the risks of COVID-19 transmission in its facility.

The Government also argues that Sachtleben poses a danger to the community and that the § 3553(a) factors do not favor his release. *Id.* at 41-50.

>18 U.S.C. § 3582(c) provides in relevant part:
>
>[T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>   **(i)** extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Sachtleben submitted a written request for compassionate release to his custodian which was denied on May 5, 2020. (Dkt. 43-8.) The Government concedes that Sachtleben has exhausted his administrative remedies. (Dkt. 42 at 27-28.) Accordingly, the merits of the Motion for compassionate release are ripe for the Court's consideration under 18 U.S.C. § 3582(c).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In response to this directive, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c), contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes. While that particular policy statement has not yet been updated to reflect that defendants (and not just the Bureau of Prisons) may move for compassionate release,[2] courts have

---

[2] Until December 21, 2018, only the Bureau of Prisons ("BOP") could bring a motion for sentence reduction under § 3582(c)(1)(A). The First Step Act of 2018, which became effective on December 21, 2018, amended § 3582(c)(1)(A)

4

universally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling" reasons" that may warrant a sentence reduction. *E.g.*, *United States v. Casey*, 2019 WL 1987311, at *1 (W.D. Va. 2019); *United States v. Gutierrez*, 2019 WL 1472320, at *2 (D.N.M. 2019); *United States v. Overcash*, 2019 WL 1472104, at *2-3 (W.D.N.C. 2019). There is no reason to believe, moreover, that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the court should consider.

As provided in § 1B1.13, consistent with the statutory directive in § 3582(c)(1)(A), the compassionate release analysis requires several findings. First, the Court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, the Court must determine whether Sachtleben is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

A.   **Extraordinary and Compelling Reasons**

Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances. U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall

---

to allow defendants to bring such motions directly, after exhausting administrative remedies. *See* 132 Stat. at 5239 (First Step Act § 603(b)).

provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.*, Application Note 1(D).

The policy statement provides that "[a] reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons." U.S.S.G. Manual §1B1.13, Application Note 4. Likewise, the catchall provision provides, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.*, Application Note 1(D). This policy statement has not been amended since the passage of the First Step Act and has led some courts to conclude that the Commission does not have a policy position applicable to motions under § 3582(c)(1)(A)(i), and that they have discretion to determine what constitutes an "extraordinary and compelling reason" on a case-by-case basis. Insofar as it states that only the Director of the BOP can bring a motion under § 3582(c)(1)(A), it is directly contradicted by the amended statutory text. This discrepancy has led some courts to conclude that the Commission does not have a policy position. The Court need not resolve that debate, though, because Sachtleben's Motion is due to be denied even if the Court assumes that the policy statement is not binding and that it has the discretion to determine what constitutes an "extraordinary and compelling reason" for a sentence reduction.[3] Sachtleben does not suggest that Subsections (A)-(C) of Application Note 1 to § 1B1.13 apply to him. Thus, the question is whether the catchall provision for extraordinary and compelling reasons applies in this case.

---

[3] Some courts have held that looking to the policy statement is helpful, but not dispositive. *See, e.g.*, *United States v. Perdigao*, No. 07-103, 2020 WL 1672322, at *2 (Apr. 2, 2020) (collecting cases); *see also United States v. Haynes*, No. 93 CF 1043 (RJD), 2020 WL 1941478, at *14 (E.D.N.Y. Apr. 22, 2020) (collecting cases). Other courts have held that they must follow the policy statement as it stands and, thus, that the Director of the BOP is the ultimate arbiter of what counts as "extraordinary and compelling" under the catchall provision. *See, e.g.*, *United States v. Lynn*, No. 89-0072-WS, 2019 WL 3805349, at *2–4 (S.D. Ala. Aug. 13, 2019).

The Court concludes that it does not.  Sachtleben was first diagnosed with a lesion on his lung in 2012.  Since that time, it has grown, but the results of his most recent repeat CT scan, completed on February 10, 2020, showed that the lesion was "stable and favored a benign etiology with malignancy less likely."  (*See* Dkt. 42-1 at 6.)  Sachtleben does not suffer from any condition identified by the Centers for Disease Control and Prevention as a condition that increases one's risk of severe illness from COVID-19.  *See* Centers for Disease Control & Prevention, *Coronavirus Disease—People with Certain Medical Conditions* (last updated July 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Although COVID-19 is present at his facility, he has tested negative for the disease on multiple occasions. (Dkt. 42-1 at 1, 39-40.)

Sachtleben's Motion can be understood to argue that the outbreak of Covid-19 at FCI Elkton alone constitutes an extraordinary and compelling reason to grant him early release. (Dkt. 43 at 14-15.)  On some level, this argument has appeal. Despite the implementation of protocols to control spread of the virus, at the height of the outbreak at FCI Elkton, inmates faced a serious risk of catching a serious, potentially deadly disease.  Indeed, the Sixth Circuit recognized this acute risk in *Wilson v. Williams* (*Wilson II*), 961 F. 3d 829, 840 (6th Cir. June 9, 2020) (vacating preliminary injunction entered in *Wilson v. Williams* (*Wilson I*), ___ F. Supp. 3d ___, 2020 WL 1940882 (N.D. Ohio Apr. 22, 2020)); ("The transmissibility of the COVID-19 virus in conjunction with Elkton's dormitory-style housing . . . and the medically-vulnerable subclass's health risks, presents a substantial risk that petitioners at Elkton will be infected with COVID-19 and have serious health effects as a result, including, and up to, death.").

However, to date, the Court has not found that incarceration in a COVID-19 "hotspot" is enough, standing on its own, to constitute an extraordinary and compelling reason warranting

7

immediate release from imprisonment. Instead, the Court has looked to the totality of the circumstances and has denied motions for compassionate release from defendants who are not at serious risk from experiencing severed COVID-19 symptoms—even when they are incarcerated in a hotspot. *See, e.g.*, *United States v. Douglas*, No. 3:14-cr-00003-RLY-CMM-03, Dkt. 407 (S.D. Ind. June 15, 2020) (finding no extraordinary and compelling reason for sentence reduction for defendant who was incarcerated at FCI Elkton and had tested positive for COVID-19 but had not displayed any symptoms and did not have conditions that put him at a higher risk of a severe or deadly case of COVID-19); *United States v. Swain*, No. 2:15-cr-00019-JMS-CMM-06, Dkt. 781 (S.D. Ind. June 3, 2020) (finding no extraordinary and compelling reasons for sentence reduction for inmate who was incarcerated at facility experiencing a major outbreak of COVID-19 and had tested positive for COVID-19 but had not displayed severe symptoms and did not have conditions that put him at a higher risk of a severe case of COVID-19).

Notably, if the Court accepted Sachtleben's argument, it would afford greater and more broadly available relief than the preliminary injunction the Sixth Circuit vacated in *Wilson II*. In *Wilson I*, Judge Gwin certified a subclass of FCI Elkton inmates who (a) were 65 years or older, or (b) had "documented, pre-existing medical conditions" that would enhance their risk of experiencing serious illness or death if they acquired COVID-19. 2020 WL 1940882 at *6. Judge Gwin did not order that all members of the subclass be released to home confinement, as Sachtleben requests. Rather, he directed that the prison staff evaluate each subclass member's eligibility for compassionate release, parole, community supervision, or furlough, and transfer all other subclass members to other BOP facilities. *Id.* at *10–11. Detailing the BOP's efforts to mitigate the virus, the Sixth Circuit found that the subclass members were unlikely to demonstrate

that the prison staff was deliberately indifferent to their serious medical needs—medical needs made more serious by advanced age and pre-existing conditions. *Wilson II*, 2020 WL 3056217.

Sachtleben requests greater relief than the *Wilson* subclass and on grounds that would apply to every inmate in the prison, not just medically vulnerable inmates. On the record as it currently stands, the Court concludes that Sachtleben has not shown that extraordinary and compelling reasons warrant a sentence reduction. Thus, his Motion must be **denied**.

Medical records indicate that the BOP is monitoring Sachtleben's lung condition on a regular basis. To the extent he believes that prison officials have been deliberately indifferent to this condition, he may pursue legal remedies through a civil rights action after exhausting available administrative remedies.

**B.      Analysis of § 3553(a) Factors**

In addition to finding that Sachtleben has not demonstrated extraordinary and compelling circumstances to justify his early release, the Court also concludes that the § 3553(a) factors counsel against Sachtleben's release. The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the defendant's crimes; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence

9

disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

As to Sachtleben's personal characteristics, *see* 18 U.S.C. § 3553(a)(1), he is 62 years old and, apart from the lesion on his lung, is in relatively good health. (Dkt. 42-1 at 16.) Despite his lack of prior criminal conduct, the nature and circumstances of his offenses weigh heavily against his request for a sentence reduction. His crimes involved minor victims and the unauthorized retention and release of sensitive national security information. These crimes were extremely serious and warrant just punishment to deter others. Furthermore, his crimes can be committed at home on the computer. Nothing about Sachtleben's current physical condition prevents him resuming these activities.

The considerations of § 3553(a)(2) also weigh against granting Sachtleben's request for a sentence reduction. His 140 month sentence was below the advisory guideline range of 168-210 months imprisonment. To release him with so much of his sentence remaining would diminish the seriousness of his offenses and would not promote respect for the law.

Finally, the Court considers § 3553(a)(2)(D)—the need for the sentence to provide Sachtleben with educational or vocational training, medical care, or other correctional treatment in the most effective manner. *See* 18 U.S.C. § 3553(a)(2)(D). Sachtleben has completed a sex offender treatment program, but he is also eligible for an RDAP program which would provide him with additional tools necessary to become a successful member of society upon release from incarceration. (Dkt. 43 at 1.) The Court acknowledges that, given the current pandemic, it is uncertain when the program will actually be available to Sachtleben but finds that continued incarceration would allow Sachtleben to receive needed services.

The Court concludes that the § 3553(a) factors weigh against Sachtleben's request for compassionate release. Thus, his Motion for Compassionate Release must be **denied**.

### III. CONCLUSION

For the reasons stated above, Sachtleben's Motions for Compassionate Release, Dkt. [43] in Case No. 1:13-cr-00200-TWP-TAB-1, and Dkt. [100] in Case No. 1:12-cr-00127-TWP-TAB-1, are **DENIED**.

**SO ORDERED.**

Date: 8/27/2020

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Charles C. Hayes
HAYES & RUEMMELE, LLC
charleshayes.atty@gmail.com

Steven D. DeBrota
UNITED STATES ATTORNEY'S OFFICE
steve.debrota@usdoj.gov